

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/03/2017

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 16-33276** |
| **DURWYN B WILLIAMS; dba** | § | **CHAPTER  13** |
| **SUCCESSFUL OPPORTUNITIES TAKEN** | § | |
| **WORLDWIDE MARKETING INC.** | § | |
| | § | |
| **Debtor(s).** | § | **DAVID R. JONES** |

## MEMORANDUM OPINION
(Docket No. 52)

Durwyn Williams objects to the secured proof of claim filed by U.S. Bank Trust, N.A., as Trustee for the LSF9 Master Participation Trust, by and through its servicing agent, Caliber Home Loans, Inc. (collectively, "Caliber").  The asserted basis for the objection is that Caliber's claim is barred by limitations under Texas law.  Caliber asserts that the defense does not apply as the initial acceleration that triggered the running of limitations was subsequently abandoned.  Caliber alternatively contends that even if limitations does apply, it is entitled to a secured claim for advances made for payment of *ad valorem* taxes and insurance within the four-year period preceding Mr. Williams' bankruptcy case.  After considering the evidence, the briefs and the arguments of counsel, the Court sustains the objection in part and denies the objection in part as set forth below.  A separate order consistent with this opinion will issue.

## Relevant Background

1.      Mr. Williams owns improved property located at 4401 Stillbrooke Drive in Houston, Texas (the "Property").  In 2006, Mr. Williams obtained a home equity loan from Bank of America, N.A. ("Bank of America") in the principal amount of $289,000.  *Caliber Exhibit 1, p. 16*.  The loan is evidenced by a promissory note dated July 10, 2006 (the "Note") and secured by a deed of trust on the Property (the "Deed of Trust").  *Caliber Exhibit 1, p. 22*.

2.      Shortly after the loan was made, Mr. Williams fell behind in his monthly payments due under the Note.  The last payment received on the Note posted on December 1, 2009. *Caliber Exhibit 5, p. 102*.

3.      On May 26, 2010, Barrett Daffin Frappier Turner & Engel, L.L.P. ("Barrett Daffin"), counsel for BAC Home Loans Servicing, LP, the servicer for Bank of America, N.A., ("BAC") sent Mr. Williams a Notice of Default and Intent to Accelerate (the "Default Notice"). *Debtor Exhibit 1*.  The Default Notice reflected an outstanding balance of $54,667.00 due under

the Note.  The Default Notice further provided that if Mr. Williams failed to make a payment within 30 days, the Note would be accelerated.

4.      On June 28, 2010, Barrett Daffin sent a letter to Mr. Williams stating that BAC had elected to accelerate the maturity of the Note and initiate legal proceedings to foreclose on the Property (the "2010 Acceleration"). *Debtor Exhibit 2*.

5.      By order dated March 14, 2011, the 151st Judicial District Court of Harris County, Texas authorized "Bank of America, its successors and assigns" to conduct a foreclosure sale under the terms of the Deed of Trust. *Debtor Exhibit 4*.  Under the Court's order, the sale could occur no earlier than June 2011.[1]

6.      On April 21, 2011, Bank of America sent Mr. Williams a letter which states, in part, as follows:

> IMPORTANT MESSAGE ABOUT YOUR HOME LOAN As of the date of this notice, our records indicate your loan is past due, and the total amount due is currently $59,080.32.  If you already mailed your payment or made prior arrangements, please disregard this notice.

*Caliber Exhibit 9*.  Nearly two years later, a Notice of Substitute Trustee Sale was issued on behalf of Bank of America, as successor by merger to BAC, noticing a foreclosure sale for February 5, 2013. *Debtor Exhibit 5*.

7.      In response, Mr. Williams filed a lawsuit against Bank of America on February 4, 2013 in the 133rd District Court of Harris County, Texas. *Debtor Exhibit 7*.  On February 4, 2013, the presiding judge issued a temporary restraining order stopping the foreclosure sale and setting a hearing to consider whether a temporary injunction should issue for February 18, 2013. *Id.*

8.      Bank of America subsequently removed the case to the United States District Court for the Southern District of Texas on March 8, 2014.  *Debtor Exhibit 9*.  The case was dismissed by order entered July 14, 2014.  *Debtor Exhibit 10*.  Mr. Williams appealed the dismissal to the Fifth Circuit Court of Appeals on August 8, 2014.  *Debtor Exhibit 11*.  The Fifth Circuit affirmed the District Court's judgment on May 7, 2015.  *Debtor Exhibit 11*.

---

[1]  In its response at Docket No. 57 to Mr. Williams' objection, Caliber asserts that the Court's order authorizing it to proceed with a foreclosure no earlier than June 2011 constituted a foreclosure sale.  At the hearing, Caliber adduced no evidence nor made argument in support of this theory.  To the extent that Caliber still maintains this position as a viable defense, the position has no merit.  Authorization to take a future act cannot constitute the act itself.  Such a position also raises unanswered questions about Caliber's subsequent actions.

9.      On August 12, 2014, in the midst of the litigation, Bank of America sent Mr. Williams a statement reflecting a balance owed under the Note of $248,431.84 and containing the following language:

> Your loan is in the foreclosure process.  This statement provides an estimate of the outstanding amounts due on your loan.  **Do not send in this amount**.  To discuss available payoff and/or workout options, please call your assigned Customer Relationship manager at the number above. (emphasis added).

*Caliber Exhibit 10*.  A number of substantially similar statements were sent after August 2014 that reflected differing amounts owed but that contained the identical language. *Caliber Exhibits 11-16*.

10.      In approximately October 2015, Mr. Williams' loan was transferred from Bank of America to U.S. Bank Trust, N.A., as Trustee for the LSF9 Master Participation Trust.  Caliber Home Loans, Inc. assumed servicing on the account.  On February 8, 2016, Caliber Home Loans, Inc. sent a statement to Mr. Williams reflecting an amount owing of $521,310.75. *Caliber Exhibit 17*.  In addition, the statement contained the following language:

> We show that your loan has been referred to foreclosure.

A similar notice was sent at least as late as June 2016.  *Caliber Exhibit 18*.

11.      On or about June 9, 2016, Barret Daffin sent Mr. Williams a Notice of [Substitute] Trustee's Sale setting a foreclosure sale for July 5, 2016. *Debtor's Exhibit 13*.  This notice attached a copy of the March 2011 Home Equity Foreclosure Order.  *Debtor Exhibit 13*.

12.      The Debtor commenced a voluntary chapter 13 case on June 30, 2016.  *Docket No. 1*.  On November 8, 2016, Caliber filed a proof of claim asserting a secured claim in the amount of $519,106.71.  *Proof of Claim No. 6*.  Mr. Williams objected to Caliber's claim on November 28, 2016.  *Docket No. 51*.  An amended objection was filed on November 29, 2016. *Docket No. 52*.  Caliber filed a response to the objection on December 23, 2016.  *Docket No. 57*.

13.      On March 6, 2017, the Court conducted an evidentiary hearing on the objection. Williams Exhibits 1, 2, 4, 5, and 7-13 were admitted.  US Bank Exhibits 1-18 were admitted. Durwyn Williams and Tonya Tillman, a custodian of records for Caliber, were sworn in and testified.  At the conclusion of the hearing, the Court allowed the parties to file post-trial briefs no later than March 31, 2017.  Mr. Williams' brief appears at Docket Nos. 70 and 71 and Caliber's brief is filed at Docket No. 72.

## Analysis

14.      The Court has jurisdiction over this contested matter pursuant to 11 U.S.C. § 1334.  This contested matter is a core proceeding arising under title 11 pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (K) and (O).  The Court has constitutional authority to enter a final order in this matter under the Supreme Court's holding in *Stern v. Marshall*, 131 S.Ct. 2594

(2011).  To the extent necessary, the parties have consented to the entry of a final order by the Court.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015).

## Issue Presented

15.     Mr. Williams asserts that limitations began to run on June 28, 2010—the date the Note was accelerated—and expired four years thereafter.   Caliber does not contest the June 28, 2010, start date but asserts that the acceleration of the Note was subsequently abandoned and therefore limitations ceased to run.  Alternatively, Caliber asserts that it is entitled to a secured claim for advances that it made for *ad valorem* property taxes and insurance with regards to the Property in the four-year period prior to the bankruptcy filing.

## Statute of Limitations

16.     The parties agree that the applicable statute of limitations is set forth in § 16.035(b) of the Texas Civil Practice and Remedies Code which provides that "[a] sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(b) (West 2002).   Following the expiration of the four-year period, "the real-property lien and the power of sale to enforce the lien become void."  *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001).

17.     If the note or deed of trust contains an acceleration clause, the cause of action accrues on the date when the noteholder "actually exercises" the option to accelerate. *Khan v. GBAK Props., Inc*., 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Burney v. Citigroup Global Markets Realty Corp.*, 244 S.W.3d 900, 903 (Tex. App.—Dallas 2008, no pet.). Acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration." *Holy Cross*, 44 S.W.3d at 566.  No dispute exists between the parties that the Note was accelerated on June 28, 2010.

## Abandonment of Acceleration

18.     Caliber contends that it subsequently abandoned its acceleration of the Note prior to the expiration of the four-year period set forth in § 16.035(b).  Under Texas law, a party who has accelerated a debt may abandon that acceleration and stop the running of the limitations period.  *Holy Cross*, 44 S.W.3d at 567 (citing *Denbina v. City of Hurst,* 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974, no writ)).  Abandonment of acceleration has the effect of restoring the note to its original condition, including the note's original maturity date.  *Id*.

19.     The acceleration of a note can be abandoned "by agreement or other action of the parties." *Boren v. U.S. Nat. Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015) (quoting, *Khan v. GBAK Properties, Inc*., 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.)). No standard exists for what "other action" is sufficient to evidence an abandonment of acceleration.  Courts have found that (i) the continued acceptance of payments, (ii) acceptance of adequate assurance payments during a bankruptcy case, (iii) the sending of additional "Notice to Cure Default and Intent to Accelerate" letters; and, (iv) the institution of new foreclosure

procedures were all sufficient to evidence an intention to abandon a prior acceleration. *See Holy Cross*, 44 S.W.3d at 567; *Khan*, 371 S.W.3d at 355; *Clawson v. GMAC Mortgage, LLC*, 3:12-CV-00212, 2013 WL 1948128 (S.D. Tex. May 9, 2013); *Meachum v. Bank of New York Mellon Trust, N.A.,* 636 Fed. Appx. 210, 211-12 (5th Cir. 2016).

20.     Although the foregoing examples are easily understood, the analysis becomes somewhat murkier in the situation where a lender sends subsequent statements reflecting a balance owed that is less than the balance of the accelerated debt.  Some courts have held that statements requesting less than the accelerated balance may constitute abandonment.  These cases do not, however, establish a *per se* rule and must be considered based on their unique facts.  A court must analyze the content of the communications to determine whether abandonment has occurred.  Caliber cites several cases in which the Fifth Circuit Court of Appeals affirmed lower-court findings that abandonment of acceleration occurred by the lender subsequently making demand on a borrower of an amount less than the full loan balance.  The facts of each of these cases are unique in several key aspects.

21.     For example, in *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 Fed. Appx. 677 (5th Cir. 2015), a servicer sent the borrower a notice of acceleration.  The servicer was then replaced by a new servicer who sent new notices of default and intent to accelerate.  The Court stated in dicta that the notices of default and intent to accelerate sent by the new servicer stating that the default could be cured by paying less than the full obligation *could* in concept constitute waiver of the initial notice of acceleration.  *Id.* at 680.  However, the finding of abandonment was based on the lender's continued acceptance of payments after the acceleration.

22.     Likewise, in *Boren v. US Bank Nat'l Ass'n*, 807 F.3d 99 (5th Cir. 2015), the bank asserted that its initial acceleration was abandoned when it sent a subsequent Notice of Default and Intent to Accelerate.  In finding abandonment, the Court relied on the language of the second Notice of Default which stated that (i) the Borens could bring their loan current by submitting the amount of their past due monthly payments—rather than the full balance of the loan; and, (ii) that the bank *would* accelerate the loan if the Borens failed to cure this arrearage. *Id.* at 104.

23.     In both of these cases, the post-acceleration correspondence provided explicit language that foreclosure would be avoided if an amount less than the accelerated balance were paid, and if not, new foreclosure proceedings would commence.  Although none of the correspondence contained the word "abandon," the unequivocal language provided that payment of a portion of the past due balance would stave off foreclosure.

24.     Caliber also asserts that it abandoned acceleration when it made subsequent advances for the payment of *ad valorem* taxes and insurance related to the Property.  In *Bank of New York Mellon v. Maniscalo*, the Court noted that "lenders pay property taxes on secured property so as to avoid a tax lien attaching to the property that would be superior to the lender's lien…. [A]ctions to protect its lien does not mean it [the lender] abandoned its acceleration of the Loan." 2016 WL 3584423 *3 (E.D. Tex. March 3, 2016).  Subsequent payment of *ad valorem* taxes and insurance does not, standing alone, demonstrate the abandonment of a prior acceleration.

25.     In the present case, no evidence was presented from which the debtor could reasonably infer that payment of less than the full amount of the accelerated debt would avoid foreclosure.  While there does exist a single notice from Bank of America to Mr. Williams dated April 21, 2011 that reflects a past due balance of $59,080.32 (*Caliber Exhibit 9*), the notice contains only boilerplate language.  The notice contains no indication that payment of a specific amount would affect the existing acceleration or a foreclosure proceeding.

26.     To the contrary, the subsequent conduct of Bank of America and Caliber demonstrates an acknowledgement of and continued reliance on the 2010 Acceleration.  The printed statements sent by Bank of America and Caliber to Mr. Williams all contain the following language:

> Your loan is in the foreclosure process. This statement provides an estimate of the outstanding amounts due on your loan. **Do not send in this amount**.  To discuss available payoff and/or workout options, please call your assigned Customer Relationship Manager at the number above. (emphasis added).

27.     Moreover, all of the foregoing statements were sent more than four years after the 2010 Acceleration and would therefore, even if sufficient to establish abandonment, be ineffective.  Furthermore, and perhaps most convincingly, Caliber sent the Debtor a Notice of [Substitute] Trustee's Sale setting a foreclosure date for July 5, 2016 which relied on the 2010 Acceleration and attached a copy of the Home Equity Foreclosure Order entered on March 14, 2011.  *Debtor's Exhibit 13*.   Caliber fails to explain this conduct in light of its abandonment argument.

28.     The Court concludes that Bank of America and its successors failed to foreclose on the Property within the permitted four-year period and that no abandonment of the 2010 Acceleration occurred.  Under Texas law, the lien on the Debtor's property securing the Note is void.  As the loan is a Texas home equity loan, Mr. Williams has no personal liability for the debt.  *See* Tex. Const. art. XVI, § 50(a)(6)(C), *Doody v. Ameriquest Mort. Co.*, 49 S.W.3d 342, 346 (Tex. 2001).  Mr. Williams' objection is sustained as to this portion of Caliber's claim.

## Claim for *Ad Valorem* Taxes and Insurance

29.     Caliber asserts that, in addition to its claim for the balance due under the Note, it holds a secured claim for the amounts advanced to pay *ad valorem* taxes and insurance related to the Property in the four-year period preceding the bankruptcy case.  Mr. Williams readily acknowledges that Caliber made these payments.  However, Mr. Williams asserts that Caliber is not entitled to a claim for these amounts because equitable subrogation is not available to Caliber.  The Court need not reach this issue as Caliber is contractually entitled to the asserted claim.  Further, in calculating the amount of Caliber's claim, the Court rejects Caliber's four-year look-back approach.

30.     The Homestead Lien Contract and Deed of Trust provides

LENDER'S EXPENDITURES.  If [Debtor] fails (A) to keep the Property free of all taxes, liens…, (B) to provide any required insurance on the Property, … then Lender may do so.  To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will be payable on demand.  The Homestead Lien Contract will also secure payment of these amounts.

*Caliber Exhibit 1, Homestead Lien Contract and Deed of Trust*, page 00023.  The Homestead Lien Contract and Deed of Trust expressly provides that the lender may pay taxes, insurance and other expenses attributable to the property and that all such amounts advanced would be secured by the Property.

31.     Mr. Williams has cited no authority, and the Court has located none, for the proposition that because limitations prevents collection of certain amounts due under a note, a lender cannot collect other amounts that subsequently become due and payable.    To the contrary, in a lawsuit by a lender against a mortgagee's probate estate to establish a claim for taxes and insurance advanced under a deed of trust when the limitations period to collect on the note had run, one Texas court of appeals succinctly stated the following:

It will not be presumed that the payer of the taxes and insurance premiums, over a period of many years after the note indebtedness became barred, was a volunteer; it is more in consonance to reason that the taxes and insurance were paid under the deed of trust provisions. The mere fact that the debt was barred does not, in our opinion, make against the deed of trust lien securing the taxes and insurance subsequently paid. The deed of trust was a valid subsisting authorization for such payments.

*Burke v. Guilford Mortgage*, 161 S.W.2d 574, 580 (Tex. Civ. App.—Dallas 1942, writ refused w.o.m.); *see also World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 682 (Tex. App.—Fort Worth 1998, pet. denied).   To the extent that the foregoing analysis is incorrect, the Court has the authority to impose an equitable lien in favor of Caliber for the amounts advanced to protect the property. *See Pare v. Campopiano*, 1994 WL 675317 (Bankr. D.R.I. 1994).

32.     Based on the record before the Court, Caliber made the following advances after the 2010 Acceleration:

| Date | Amount | Reason for Advance |
|---|---|---|
| 12/15/2010 | $8,259.36 | taxes |
| 10/19/2011 | $3,679.00 | insurance |
| 12/09/2011 | $8,278.07 | taxes |
| 07/02/2012 | ($3,448.00) | insurance refund |
| 07/05/2012 | $114.00 | insurance |
| 11/23/2012 | $6,676.47 | insurance |
| 12/14/2012 | $8,278.02 | taxes |

| | | |
|---|---|---|
| 09/11/2013 | $2,823.00 | insurance |
| 12/11/2013 | $7,863.78 | taxes |
| 12/04/2014 | $8,710.83 | taxes |
| 12/09/2015 | $9,343.56 | taxes |
| 03/04/2016 | $4,870.00 | insurance |
| **TOTAL** | **$65,448.09** | |

Under the express terms of the Homestead Lien Contract and Deed of Trust, the amounts are payable by Mr. Williams upon demand and are secured by the Property. The record is devoid of any action taken with respect to these debts, including any evidence that a demand for payment[2] was ever made by Caliber upon Mr. Williams. The Court therefore overrules Mr. Williams' objection as to these amounts and finds that Caliber holds a claim secured by the Debtor's Property in the amount of $65,448.09.

### Conclusion

33.    As set forth above, the Court sustains Mr. Williams' objection in part and overrules the objection in part. Caliber has an allowed secured claim in the amount of $65,448.09. All other claims are disallowed. All other relief is denied.

**SIGNED: August 3, 2017.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

---

[2]    As these amounts are payable upon demand, the Court equates a demand for payment with acceleration of the specific debt for which payment was demanded under the Texas statute.